**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

**POLARIS INNOVATIONS LIMITED,**

**Plaintiff,**

**v.**

**DELL INC. and NVIDIA CORPORATION,**

**Defendants.**

**Case No.: 16-cv-00451-XR**

**JURY TRIAL DEMANDED**

**DEFENDANTS DELL INC. AND NVIDIA CORPORATION'S
OPPOSED MOTION TO TRANSFER VENUE**

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ............................................................................................ 1

II.  FACTUAL BACKGROUND ......................................................................... 2

    A.   The Lawsuit .......................................................................................... 2

    B.   The Plaintiff ......................................................................................... 3

    C.   The Defendants .................................................................................... 3

        1.   NVIDIA ...................................................................................... 3

        2.   Dell............................................................................................. 4

    D.   Non-Party Witnesses and Evidence ..................................................... 5

III. THE NORTHERN DISTRICT OF CALIFORNIA IS THE MORE CONVENIENT
     FORUM ........................................................................................................ 6

    A.   The case could have been brought in N.D. Cal.................................... 7

    B.   The private interest factors strongly favor transfer to N.D. Cal. ............................. 7

        1.   "Relative ease of access to sources of proof" favors transfer. ...................... 8

        2.   The "availability of compulsory process to secure the attendance
             of witnesses" strongly favors transfer.......................................... 9

        3.   The high cost of attendance for willing witnesses in both time
             and monetary expense favors transfer.......................................... 11

        4.   All other practical problems that make trial of a case easy,
             expeditious, and inexpensive favor transfer................................. 11

    C.   The public interest factors favor transfer to N.D. Cal............................. 12

IV.  THE AUSTIN DIVISION IS MORE CONVENIENT THAN THE SAN
     ANTONIO DIVISION................................................................................. 13

    A.   The case against Dell and NVIDIA could have been brought in the
        Austin Division. .................................................................................. 13

    B.   The private interest factors favor transfer to the Austin Division. .......................... 13

        1.   The "relative ease of access to sources of proof" favors transfer. ............... 14

2.      The "availability of compulsory process to secure the attendance of witnesses" is neutral..................................................................................... 14

3.      The high cost of attendance for willing witnesses in both time and monetary expense favors transfer. ............................................................................ 14

4.      All other practical problems that make trial of a case easy, expeditious, and inexpensive favor transfer.......................................................................... 15

C.      The public interest factors favor transfer to the Austin Division............................. 15

V.      CONCLUSION............................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of Texas v. Blackberry Ltd.*,
   Civil Action No. 6:13-cv-362, 2014 WL 10748106 (W.D. Tex. June 11, 2014)   9, 11, 13, 14

*Airbus S.A.S. v. Aviation Partners, Inc.*,
   Civil No. A-11-CA-1030-LY, 2012 WL 2515414 (W.D. Tex. June 29, 2012)   7, 8, 13

*Bascom v. Maxim Integrated Prods., Inc.*,
   534 F. Supp. 2d 700 (W.D. Tex. 2008)   16

*Cadle Co. v. Keyser et al.*,
    Case No. 1:14-cv-00758-LY (W.D. Tex. Mar. 19, 2015)   15

*Cadle Co. v. Keyser et al.*,
   Case No. 1:14-cv-00758-LY, 2015 WL 764256 (W.D. Tex. Feb. 23, 2015)   14

*Corel Corp. v. Dell Inc.*,
   Case No. 7:13-cv-00040-RAJ (W.D. Tex. July 25, 2013)   16

*DataQuill Ltd. v. Apple Inc.*,
   No. A-13-CA-706-SS, 2014 WL 2722201 (W.D. Tex. June 14, 2014)   passim

*Healthpoint, Ltd. v. Derma Sciences, Inc.*,
   939 F. Supp. 2d 680 (W.D. Tex. 2013)   11

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)   10, 11

*In re Horseshoe Entertainment*,
   337 F.3d 429 (5th Cir. 2003)   13

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009)   2, 11

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004)   12

*In re Volkswagen of America, Inc.*,
   545 F.3d 304 (5th Cir. 2008)   passim

*LG Elecs. Inc. v. Advance Creative Computer Corp.*,
   131 F. Supp. 2d 804 (E.D.Va.2001)   10

*Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*,
   Case No. 8:16-cv-00300-CJC-RAO (C.D. Cal. 2016)   3, 8

iii

*Via Vadis, LLC v. Netgear, Inc.*,
   Case No. A-14-CV-809-LY, 2015 WL 10818675 (W.D. Tex. July 30, 2015)          6, 8

**Statutes**

28 U.S.C. § 1391.................................................................................................8

28 U.S.C. § 1400.................................................................................................7

28 U.S.C. § 1404.............................................................................................1, 2

## I.       INTRODUCTION

Plaintiff Polaris Innovations Limited ("Polaris") alleges that California-based NVIDIA's products, including various mobile processors, graphics processing units ("GPUs") and graphics cards, alone or within a Dell product, infringe six Polaris patents. Defendants[1] move to transfer this case pursuant to 28 U.S.C. § 1404(a) to the Northern District of California for the convenience of the parties and witnesses, and request an oral argument.[2] Given the underlying accused technology and location of witnesses and evidence, the Northern District of California is by far the most convenient and appropriate venue for this dispute. Should the Court decline to transfer this case to California, defendants respectfully request a transfer to the Austin Division which of the divisions in the Western District is the only one with potential witnesses and evidence.

The majority of witnesses and evidence are located in the Northern District of California, at NVIDIA's headquarters in Santa Clara, California. The Northern District is also home to non-party witnesses, such as component makers identified in Polaris's infringement allegations, inventor(s), individuals and entities that developed accused memory standards, and prior art inventors. The lone ties to the Western District are NVIDIA's satellite Austin office and the presence of Dell (an NVIDIA customer and named defendant) in the Austin Division. Dell, however, does not design or develop the accused memory controllers or memory—it simply purchases the memory modules from third party manufacturers and the technology to access that memory from NVIDIA. Thus, virtually all aspects of this case will revolve around witnesses, documents, and events within the Northern District of California. To the extent there are any

---

[1]    NVIDIA Corporation ("NVIDIA") and Dell Inc. ("Dell") are collectively referred to herein as "Defendants."

[2]    Counsel for NVIDIA met and conferred with counsel for Polaris in good-faith to attempt to resolve the matter by agreement.  Polaris was unwilling to agree to a transfer of the case and therefore opposes this motion.

potential witnesses or evidence in the Western District, they would be found in the Austin Division. Notably, no expected sources of evidence are located in San Antonio.

As the Federal Circuit has previously held when applying 28 U.S.C. §1404(a), "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co., Ltd.,* 589 F.3d 1194, 1198 (Fed. Cir. 2009). The *Nintendo* decision squarely fits here, and thus Defendants respectfully request that this case be transferred to the Northern District of California. Alternatively, to the extent Dell's Round Rock presence or NVIDIA's Austin office weighs heavy in the Court's analysis, Defendants respectfully request that the Court transfer this case to the Austin Division.

## II.     FACTUAL BACKGROUND

### A.     The Lawsuit

On May 16, 2016, Polaris asserted U.S. Pat. Nos. 6,532,505 ("the '505 patent"), 7,124,325 ("the '325 patent"), 7,405,993 ("the '993 patent"), 7,886,122 ("the '122 patent"), 8,161,344 ("the '344 patent"), and 8,207,976 ("the '976 patent") (collectively, "Patents-in-Suit") against NVIDIA and the '122, '344 and '976 patents against Dell. *See* D.I. 1. For most of the Patents-in-Suit, Polaris contends that NVIDIA and Dell infringe based on making, using, selling, offering to sell, and/or importing products that employ third party industry standard memory devices, such as GDDR5 memory or LPDDR3 memory.[3] *See, e.g., id.* ¶¶ 3, 7. Memory standards are a set of operational rules and design guidance that are collaboratively assembled and approved by third party industry groups to foster efficient development of new technologies. The standards enable multiple parties

---

[3]     The "GDDR5" memory standard means "Graphics Double Data Rate, 5th Generation."  The "LPDDR3" memory standard means "Low Power Double Data Rate, 3rd Generation."

to manufacture computer memories that are essentially interoperable. Companies like NVIDIA can more easily design products, because they can depend on standardized memories to be available from a variety of third party suppliers. GDDR5 and LPDDR3 memory are only two examples of standardized memories that NVIDIA purchases to include in its products.

Procedurally, this case remains at a very early stage. Defendants just recently filed their answers to the complaint. The Court has not yet issued a scheduling order or discovery order. Accordingly, this motion is timely and transfer will not pose any significant burden or delay.

### B.    The Plaintiff

Polaris is from Ireland—not the Western District of Texas. It is organized under the laws of Ireland, with its principal place of business there as well. D.I. 1 ¶ 1. Prior to this suit, Polaris sued Kingston for patent infringement in the Central District of California. *See* Ex. G to the Hoffman Decl.[4] (complaint from *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, Case No. 8:16-cv-00300-CJC-RAO (C.D. Cal. 2016)). Thus, Polaris has demonstrated and must concede that this forum is not uniquely convenient for it and notably that California is convenient for it.

### C.    The Defendants

### 1.    NVIDIA

This case concerns GDDR5 and LPDDR3 compliant memory and the memory controllers and interfaces designed to operate with that third party memory. Defendant NVIDIA is responsible for the design, development, marketing, sales and distribution of those memory controllers and interfaces, but not the underlying GDDR5 and LPDDR3 compliant memory, which is

---

[4]    "Hoffman Decl." refers to the attached Declaration of David M. Hoffman in Support of Defendants Dell Inc. and NVIDIA Corporation's Motion to Transfer Venue.

manufactured by third parties. NVIDIA is incorporated under the laws of Delaware and has its headquarters in Santa Clara, California. Reed Decl. ¶ 2.[5] Research, design, and development efforts related to NVIDIA products that include computer memory are directed from NVIDIA's Santa Clara headquarters. *Id.* ¶ 5. Decisions regarding distribution and marketing of the accused products also occur in Santa Clara. *Id.* ¶ 6. The Santa Clara headquarters also houses essentially all of the relevant documents. *Id.* ¶ 7. Approximately 3,820 employees work at NVIDIA's Santa Clara offices, including 2,630 employees working on the accused products. *Id.* ¶ 8. Almost all of NVIDIA's relevant witnesses are located in the Northern District of California, including the Chip Managers[6] for the accused products. *Id.* ¶ 11.

## 2.    Dell

Dell is incorporated under the laws of Delaware and headquartered in Round Rock, Texas in the Austin Division. Guerra Decl. ¶ 3.[7] Dell sells the accused products in the Northern District of California and is subject to personal jurisdiction there. *Id.* ¶¶ 3-4. Dell does not design or develop any of the accused technologies. *Id.* ¶ 7. Of the three patents that Polaris asserts against Dell, Polaris identifies NVIDIA GDDR5 memory technology as Polaris's basis for asserting two of them (the '122 and '344). *See, e.g.,* D.I. 1 ¶¶ 146-51, 162-96. For the '976 patent, Polaris's infringement allegations point to NVIDIA GDDR5 memory technology combined with a memory module provided by non-party SK Hynix. *See, e.g.,* D.I. 1 ¶¶ 201-02. Any meaningful testimony

---

[5]   "Reed Decl." refers to the Declaration of David Reed in Support of Defendants Dell Inc. and NVIDIA Corporation's Motion to Transfer Venue, which was filed as an attachment to NVIDIA's concurrently filed motion to file under seal pursuant to Local Court Rule CV-5.2.

[6]   Chip Managers are responsible for all aspects of a project from development through to mass production.  Accordingly, they oversee and direct all aspects of design and development of a product chip, and are knowledgeable about its operation. Reed Decl. ¶ 10.

[7]   "Guerra Decl." refers to the attached Declaration of William Guerra in Support of Defendants Dell Inc. and NVIDIA Corporation's Motion to Transfer Venue.

on the operation of the accused Dell products would have to come from either NVIDIA or SK Hynix—both of which have a significant presence in California.

### D.    Non-Party Witnesses and Evidence

Key non-parties presently known to Defendants have ties to the Northern District of California. For example, SK Hynix—from whom both NVIDIA and Dell purchase the accused memory technology—is a Korean company with a significant presence in San Jose, in the Northern District of California. *See e.g.*, SK Hynix Memory Solutions' website, http://www.skhms.com/company/ ("SK hynix is located in Icheon, Korea and is a world leading memory semiconductor manufacturer focused on DRAM and NAND Flash devices. As of February, 2013, SKHMS moved to a new location in San Jose, CA on the SK hynix America campus.") (last visited Aug. 12, 2016). Additionally, the inventor of the '122 patent, Jong-Hoon Oh, resides in San Jose, California. *See* Ex. I to the Hoffman Decl. None of the inventors or known relevant third parties reside in the San Antonio division. *See* Hoffman Decl. ¶¶ 2-9, 12; Exs. A-F, I to the Hoffman Decl.

There is also a high likelihood that other relevant third parties will be found in the Northern District of California. For example, Polaris's infringement allegations for several patents are based on the GDDR5 memory standard. Qimonda (previous owner of the Patents-in-Suit) participated in meetings for the GDDR5 memory standard prior to filing the Patents-in-Suit. As a result, Qimonda had an obligation to disclose its patent activity to the standards body, and was obligated to license the patents under reasonable and non-discriminatory terms. Its failure to do so is the basis for one of NVIDIA's counterclaims. D.I. 19 at 31-35. One Qimonda employee who participated in these GDDR5 meetings was Jeffrey Chung, who currently works for Cadence Design Systems in the San Francisco bay area, in the Northern District of California. *See* Hoffman Decl. ¶ 9; Ex. F to the Hoffman Decl.

Moreover, standards organizations are collaborative in nature, so other participants in the GDDR5 and LPDDR3 standard meetings may have been involved in the conception of the Patents-in-Suit. At the very least, these other members were developing similar technologies during the relevant time frame and thus are likely sources of prior art that may invalidate the Patents-in-Suit. These entities include at least AMD, Altera, Etron, SK Hynix, and Intel—all of which have a heavy presence in the Northern District of California. As further examples, prior art references to the Patents-in-Suit include named inventors and at least one assignee located in the Northern District of California. *See e.g.*, Ex. K to the Hoffman Decl. (U.S. Patent Pub. No. US2005/0169097, prior art to the '122 patent); Ex. L to the Hoffman Decl. (U.S. Patent No. 8,015,473, prior art to the '344 patent).

## III.   THE NORTHERN DISTRICT OF CALIFORNIA IS THE MORE CONVENIENT FORUM

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Law of the circuit in which the motion is brought applies. *See Via Vadis, LLC v. Netgear, Inc.*, Cause No. A-14-CV-809-LY, 2015 WL 10818675, at *1 (W.D. Tex. July 30, 2015)).

In deciding whether to transfer a case in the Fifth Circuit, the Court makes two inquiries: (1) "whether the requested district is one where [Plaintiff] could have brought [the] action," and (2) "whether private and public interest factors favor transfer" such that the transferee venue is "clearly more convenient." *Airbus S.A.S. v. Aviation Partners, Inc.*, Civil No. A-11-CA-1030-LY, 2012 WL 2515414, at *3 (W.D. Tex. June 29, 2012). "[T]he movant need not show the [factors] *substantially* outweigh the plaintiff's choice of venue—it is enough to show the new venue is clearly more convenient than the original one." *DataQuill Ltd. v. Apple Inc.*, No. A-13-CA-706-

SS, 2014 WL 2722201, at *2 (W.D. Tex. June 13, 2014) (citing *In re Volkswagen of America, Inc.*, 545 F.3d 304, 314 (5th Cir. 2008)).

### A.     The case could have been brought in N.D. Cal.

There is no dispute that this lawsuit could have been brought in the Northern District of California. "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of [alleged] infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). As noted above, NVIDIA is headquartered in the transferee district, the Northern District of California, and the majority of its U.S.-based development and commercialization of the accused products takes place there. Reed Decl. ¶¶ 2, 5-6. Dell, although not headquartered in the transferee district, has a research and design center located in the Northern District of California and sells accused products there. Guerra Decl. ¶¶ 3-4. Therefore, both have sufficient contacts to establish personal jurisdiction. *See, e.g.,* 28 U.S.C. §§ 1391 (b) and (c). Thus, this threshold determination is met for both defendants.

### B.     The private interest factors strongly favor transfer to N.D. Cal.

In the Fifth Circuit, the Court weighs four private interest factors in deciding transfer: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *See Airbus*, 2012 WL 2515414 at *3 (quoting *Volkswagen of Am.*, 545 F.3d at 315).

Plaintiff's choice of venue "is not to be treated as a distinct factor in a venue analysis." *id.; see also Via Vadis,* 2015 WL 10818675, at *3 ("[W]here the plaintiff has virtually no connection to the chosen forum, a plaintiff's choice is entitled to little deference."). And here, Polaris can hardly argue that California is an inconvenient forum after recently filing suit against Kingston

there. *See* Ex. G to the Hoffman Decl. (complaint from *Polaris Innovations*, No. 8:16-cv-00300-CJC-RAO (C.D. Cal. 2016)).

**1.    "Relative ease of access to sources of proof" favors transfer.**

The location of the operative documents and allegedly infringing technology in this case strongly weighs in favor of transfer to the Northern District of California. The complicated functionality and architecture of the accused NVIDIA products will require a detailed analysis of various systems, including the bus interface, processor design, DRAM subsystems, semiconductor chip design, clocking, software, and others. NVIDIA is the predominant source of evidence concerning the aforementioned aspects of the accused products and its location should be given substantial weight. *See Affinity Labs of Texas, LLC v. Blackberry Ltd.*, Civil Action No. 6:13-cv-362, 2014 WL 10748106, at *6 (W.D. Tex. June 11, 2014) ("[A] court should also be mindful of the location of the activities surrounding the research, development, and production of the accused products because '[t]he trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.").

NVIDIA's Santa Clara office is where the bulk of the design, development, marketing, and sales activities occur. It is home to 2,630 employees knowledgeable about all aspects of the accused products and both electronic and physical documents and evidence. Reed Decl. ¶¶ 7-8. By comparison, NVIDIA has only 300 employees in the Western District of Texas, all located in the Austin Division (97.6 miles from the San Antonio Courthouse). *Id.* ¶ 12. While some of the evidence may be available through electronic discovery, "[t]he Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace." *DataQuill*, 2014 WL 2722201, at *3 (citing *Volkswagen of Am.*, 545 F.3d at 316).

Dell's headquarters is in Round Rock, Texas, but the bulk of relevant evidence (and virtually all of the significant technical information) related to the development of the relevant computer architecture, design, and software is not in Dell's possession. Guerra Decl. ¶ 8. Rather, Polaris's allegations relate to either NVIDIA's technology (in the Dell products) or standardized memory technology that Dell receives from other suppliers. *See, e.g.,* D.I. 1 ¶ 201 (identifying an accused component manufactured by SK Hynix). While the Federal Circuit has observed that "the bulk of the relevant evidence *usually* comes from the accused infringer" in patent infringement cases, that is not the case here where Dell does not design or develop the accused technical functionality, but simply resells it in its products. *Compare LG Elecs. Inc. v. Advance Creative Computer Corp.,* 131 F. Supp. 2d 804, 811 (E.D.Va.2001) (holding that claims against a reseller were peripheral in nature when the reseller did not manufacture the infringing item and would be liable only if the manufacturer infringed the patent) and *In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009)) (emphasis added).

Because the overwhelming majority of evidence is located at NVIDIA's headquarters in the Northern District of California, this factor strongly supports transfer to that venue.

### 2.      The "availability of compulsory process to secure the attendance of witnesses" strongly favors transfer.

The second factor also weighs in favor of transfer because, unlike the Western District of Texas, the Northern District of California *does* have subpoena power over the majority of non-party witnesses. Compulsory process to require a non-party witness to appear at trial, or to require that other sources of proof be brought to trial by a non-party, are compelling facts favoring transfer in the transfer analysis. *Genentech*, 566 F.3d at 1345 ("[T]here is a substantial number of witnesses within the subpoena power of the Northern District of California and no witness who can be compelled to appear in the Eastern District of Texas. The fact that the transferee venue is a venue

with usable subpoena power here weighs in favor of transfer, and not only slightly."). Transfer is favored under this factor when more non-party witnesses reside in or are within the subpoena power of the proposed venue than the current one. *See Affinity*, 2014 WL 10748106, at *4 (finding the Northern District of California had more relevant non-party witnesses, favoring transfer).

For example, NVIDIA and Dell may need to obtain evidence from SK Hynix (which is identified in Polaris's infringement allegations) to understand the operation of the functionality accused of infringing the '976 patent. SK Hynix has a significant presence in San Jose, in the Northern District of California. *See e.g.*, SK Hynix Memory Solutions' website, http://www.skhms.com/company/ ("SK hynix is located in Icheon, Korea and is a world leading memory semiconductor manufacturer focused on DRAM and NAND Flash devices. As of February, 2013, SKHMS moved to a new location in San Jose, CA on the SK hynix America campus.") (last visited Aug. 12, 2016). Other third party witnesses in the Northern District of California include the inventor of the '122 patent, employees of companies involved in standards development, and relevant prior art witnesses. *See* Hoffman Decl. ¶¶ 9, 12.

"Convenience for the witnesses," such as SK Hynix, the inventor of the '122 patent, and prior art inventors, "has been recognized as 'the most important factor under § 1404(a).'" *Healthpoint, Ltd. v. Derma Sciences, Inc.*, 939 F. Supp. 2d 680, 690 (W.D. Tex. 2013) ("Additionally, 'it is the convenience for *non-party* witnesses, rather than of party witnesses, that is more important…'"); *see also Genentech*, 566 F.3d at 1343 (convenience for witnesses is most important factor in § 1404(a) analysis). Given the likely need for live testimony from multiple non-party witnesses outside of the subpoena power of this Court, and the importance of their convenience, the "[C]ourt should grant a motion to transfer." *See Nintendo*, 589 F.3d at 1198 (granting transfer after finding the contacts in the transferee district extensive and weighing

substantially in favor of the defendant, while finding other factors neutral); *DataQuill*, 2014 WL 2722201, at *4 (finding Apple's Austin campus that did not perform design work insufficient to counterbalance Apple's eight former developers and handful of inventors located in the Northern District of California).

### 3. The high cost of attendance for willing witnesses in both time and monetary expense favors transfer.

The time and expense for willing witnesses (the vast majority of whom are located in the Northern District of California) to travel to Texas, and the attendant time away from their regular employment, weighs heavily in favor of transfer. *See In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004)*; DataQuill*, 2014 WL 2722201, at *4 ("Inconvenience to these witnesses increases as the distance they must travel increases, and traveling to a local court is far more convenient than traveling to Texas."). As recognized by the Fifth Circuit, "the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour." *Volkswagen AG*, 371 F.3d at 205. Here, NVIDIA Chip Managers are likely to testify to the operation of the accused NVIDIA technology, including that found in the Dell products. *See* Reed Decl. ¶ 11. These witnesses are located in the Northern District of California. *Id.* To travel to the current district, the witnesses would have to travel approximately 1,600 miles, which would require at least five hours of travel time and meals and lodging expenses, in addition to the time lost from work. Because the cost of attendance for these willing witnesses is greatly reduced if the case is transferred to the Northern District of California, this factor also favors transfer.

### 4. All other practical problems that make trial of a case easy, expeditious, and inexpensive favor transfer.

No "other practical problems" favor this District. *In re Horseshoe Entertainment*, 337 F.3d

429, 434 (5ᵗʰ Cir. 2003) (finding this factor is only applicable "in rare and special circumstances" and if "such circumstances are established by clear and convincing evidence."). *see generally Affinity*, 2014 WL 10748106, at *7 (finding judicial economy warranted transferring similar cases involving the same parties or issues to the Northern District of California.). Defendants just recently answered the complaint. The Court has not yet issued a scheduling order or discovery order, nor has the Court invested significant resources in the merits of the case. This factor is neutral, and transfer should not pose any burden or result in delay.

### C.   The public interest factors favor transfer to N.D. Cal.

The relevant public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Airbus*, 2012 WL 2515414, at *3 (quoting *Volkswagen of Am.*, 545 F.3d at 315) (alteration in original). The first, third, and fourth public interest factors are largely neutral in patent cases. *See DataQuill*, 2014 WL 2722201, at *4-5. The Court in *DataQuill* explained that the first factor was neutral because "[a]ttempting to accurately understand another court's docket from the outside is always a difficult task" and the troubles unique to the Northern District of California's docket "likely are not visible from bland statistics such as average time to trial." *Id.* at *4. The Court also found that the third and fourth factors were neutral "as neither district has a demonstrated advantage in applying federal patent law and the parties have not raised any potential conflict of laws issues." *Id.* at *5.

The second public interest factor, however, favors transfer. NVIDIA's headquarters in the Northern District of California evidences a local interest in the outcome of this case. *See Affinity*, 2014 WL 10748106, at *3 ("The District where a party has its principal place of business typically has a stronger local interest in the adjudication of the case."). Any decision negatively affecting

NVIDIA or its employees would have a far greater impact on the transferee district than the Western District of Texas. By contrast, there is no local interest weighing against transfer because Polaris is from Ireland, not Texas, and has already sued once in California. The public interest factors thus weigh in favor of transfer.

## IV.   THE AUSTIN DIVISION IS MORE CONVENIENT THAN THE SAN ANTONIO DIVISION

If the Court finds that transfer to the Northern District of California is not warranted, it would likely be on the basis of the parties' contacts with the Austin Division—not the San Antonio Division. Even Polaris's bases for bringing suit in this District points to Austin, not San Antonio. *See* D.I. 1 ¶¶ 21-25. These ties to the Western District of Texas are insignificant when compared to the parties' and non-parties' relevant contacts with the Northern District of California, but dwarf any ties to the San Antonio division. Thus, in the event the Court does not transfer the case to the Northern District of California, the public and private interest factors favor transferring the case to the Austin Division. *See Cadle Co. v. Keyser et al.,* Case No. 1:14-cv-00758-LY, 2015 WL 764256, at *2 (W.D. Tex. Feb. 23, 2015) *adopted by Cadle Co. v. Keyser et al.,* Case No. 1:14-cv-00758-LY, D.I. 42 (W.D. Tex. Mar. 19, 2015).

### A.   The case against Dell and NVIDIA could have been brought in the Austin Division.

The case against Dell and NVIDIA could have been brought in the Austin Division, which has the same jurisdiction as the San Antonio Division. *See* D.I. 19 at 5; D.I. 21 at 3.

### B.   The private interest factors favor transfer to the Austin Division.

Applying the same factors that were used in the inter-district analysis, the Austin Division is clearly a more convenient forum than the San Antonio Division.

1.      **The "relative ease of access to sources of proof" favors
        transfer.**

To the extent relevant evidence is located anywhere in Texas, it is located in the Austin Division. In its complaint, Polaris identifies the following contacts with Austin as the basis for venue in the Western District of Texas: Dell's presence in Round Rock, Texas (D.I. 1 ¶ 23); NVIDIA's office in Austin, Texas (*id.* ¶ 24); NVIDIA's presentation at the Austin Convention Center (*id.* ¶ 25).

In addition, NVIDIA employs approximately 300 people in its Austin office, including engineering resources who work with the 2,630 Santa Clara employees on the accused NVIDIA products. Reed Decl. ¶ 12. For example, potential witness Tom Tomazin is an NVIDIA engineer that lives and works in Austin. *Id.* ¶ 13. He was heavily involved with the core NVIDIA team in California in the design and development of at least one of the accused mobile processors and works (with the Santa Clara team) on aspects of the product daily.[8] *Id.* ¶ 13. There are no such contacts with San Antonio. No documentary or other evidence is located in this Division. Thus, with respect to the first factor, the Austin Division is clearly more convenient than the San Antonio Division.

2.      **The "availability of compulsory process to secure the
        attendance of witnesses" is neutral.**

Because the Court has statewide subpoena power, the second factor is neutral.

3.      **The high cost of attendance for willing witnesses in both time
        and monetary expense favors transfer.**

Given that NVIDIA has an office in the Austin Division, willing witnesses from California could work from NVIDIA's Austin facilities if called upon to attend trial in Austin. They would

---

[8]    Many more relevant witnesses exist in California with overlapping knowledge to Mr. Tomazin. For example, Tom Tomazin reports to Ashish Karandikar in Santa Clara. *Id.* ¶ 14.

have no such ability in San Antonio. Moreover, travel options from the San Francisco bay area to San Antonio are much more limited than those to Austin, with approximately five nonstop flights per day into Austin versus just one per day into San Antonio. *See* Hoffman Decl. ¶ 13. Any relevant Texas witnesses reside in or around Austin or Round Rock, so they would be required to stay overnight in San Antonio due to the excessive traffic on Interstate 35 between Austin and San Antonio. San Antonio is approximately 100 miles from Round Rock, making travel to San Antonio more burdensome than travel to Austin. *See Bascom v. Maxim Integrated Prods., Inc.*, 534 F. Supp. 2d 700, 704 (W.D. Tex. 2008) (transferring case from Austin Division to San Antonio Division); *Corel Corp. v. Dell Inc.*, Case No. 7:13-cv-00040-RAJ, D.I. 23 (W.D. Tex. July 25, 2013) (Ex. H to the Hoffman Decl.) (transferring case from Midland-Odessa Division to Austin Division). Because the time away from work can be significantly reduced by transfer to the Austin Division, this factor also favors transfer.

### 4.      All other practical problems that make trial of a case easy, expeditious, and inexpensive favor transfer.

As described in Section III.B.4, no "other practical problems" favor this District.

### C.      The public interest factors favor transfer to the Austin Division.

Here, the second public interest factor (the most relevant one in patent cases) favors transfer. To the extent Defendants have any localized interests in Texas, those interests are in Austin and Round Rock. For example, Polaris points to the business offices in Austin and NVIDIA's promotional activities at the Austin Convention Center. *See* D.I. 1 ¶ 25. There are no such localized interests in the San Antonio Division. *See Volkswagen of Am.*, 545 F.3d at 317-18 (finding localized interest weighed heavily in transferring from the Marshall Division to the Dallas Division because all of the evidence was in Dallas and there was "no relevant factual connection to the Marshall Division.").

**V.      CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that this Court transfer this case to the Northern District of California or, in the alternative, to the Austin Division.

Dated: September 21, 2016                                ALSTON & BIRD LLP

                                                        By:  */s/ Brady Cox*
                                                             *(with permission by David M. Hoffman)*
                                                             Michael J. Newton
                                                             Texas Bar No. 24003844
                                                             mike.newton@alston.com
                                                             Brady Cox
                                                             Texas Bar No. 24074084
                                                             brady.cox@alston.com
                                                             2828 North Harwood Street, Suite 1800
                                                             Dallas, TX 75201
                                                             Tel: (214) 922-3400
                                                             Fax: (214) 922-3899

                                                             Brianna Kadjo (admitted *pro hac vice*)
                                                             brianna.kadjo@alston.com
                                                             1950 University Avenue, 5th Floor
                                                             East Palo Alto, CA 94303
                                                             Tel: 650-838-2000
                                                             Fax: 650-838-2001

                                                        ATTORNEYS FOR DEFENDANT
                                                        DELL INC.

Dated: September 21, 2016

FISH & RICHARDSON P.C.

By: */s/ David M. Hoffman*
    David M. Hoffman
    Texas Bar No. 24046084
    hoffman@fr.com
    One Congress Plaza
    111 Congress Avenue, Suite 810
    Austin, TX 78701
    Tel: (512) 472-5070
    Fax: (512) 320-8935

    Katherine Vidal
    California Bar No. 194971
    vidal@fr.com
    Drew Goldberg
    California Bar No. 307254
    goldberg@fr.com
    Bryan Basso
    California Bar No. 278973
    basso@fr.com
    500 Arguello Street
    Redwood City, CA 94063
    Tel: (650) 839-5070
    Fax: (650) 839-5071

    Aamir Kazi
    Georgia Bar No. 104235
    kazi@fr.com
    1180 Peachtree Street NE, 21st Floor
    Atlanta, GA 30309
    Tel: (404) 892-5005
    Fax: (404) 892-5002

    Ruffin Cordell
    Texas Bar No. 04820550
    cordell@fr.com
    1425 K Street NW, 11th Floor
    Washington, D.C. 2005
    Tel: (202) 783-5070
    Fax: (202) 783-2331

**ATTORNEYS FOR DEFENDANT**
**NVIDIA CORPORATION**

## <u>CERTIFICATE OF CONFERENCE</u>

This is to certify that counsel for Defendant Nvidia Corporation contacted counsel for Plaintiff to confer regarding the substance of this Motion.  Plaintiff's counsel indicated that Plaintiff is opposed to the relief requested in this Motion, and it is therefore submitted to the Court for determination.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on September 21, 2016, and was served via CM/ECF on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(b)(1).

*/s/ David M. Hoffman*
David M. Hoffman